HAHNEL BROS CO. v. CLAUSON.

No. 310.

District Court, D. Maine, S. D.
Nov. 13, 1947.

Seth May, of Auburn, Me., for plaintiff.

Leland T. Atherton, Sp. Asst. to Atty. Gen., Alton Lessard, U. S. Dist. Atty., of Lewiston, Me., and Edward Harrigan, Asst. U. S. Dist. Atty., of Portland, Me., for defendant.

PETERS, District Judge.

This case, heard without a jury, was brought for the recovery of $3969.34, payment of which sum was exacted of the plaintiff by the Collector as a deficiency due on the plaintiff's income tax for the year 1941. The alleged deficiency arose from the deduction by the plaintiff, in its income tax return, of an account of $5769.66 against one C. E. Reynolds as a bad debt. Seasonable application for a refund was made and this suit was brought within the required period after refusal.

I find the facts,—substantially undisputed,—to be as follows:

The plaintiff is a roofing and sheet-metal contracting company which had done business with Mr. Reynolds for many years.

The debt in question arose from an open account which the plaintiff had against Reynolds, originating prior to January 1, 1931, on which date the balance against Reynolds was $5042. In November, 1931, Reynolds was in financial straits and borrowed $1000, from the plaintiff to meet a pay-roll,—that sum being charged in the account. In March, 1932, Reynolds paid $330, on the whole account and in December of that year he was credited with $5.10, leaving a debit balance of $5,769.66.

Mr. Reynolds traces the origin of his business troubles to a heavy loss, sustained by him on a contract with the State of Maine, about the year 1927, from which he never recovered. He lost his business and even his home by foreclosure of mortgage, and went to work for another concern at weekly wages. There was no time up to 1941 inclusive that he could have paid the debt. Under the law of Maine it was barred by the statute of limitations in 1938, but it was uncollectible all the time. Legal

action to enforce payment would have been futile, even before the statute of limitations operated. This situation was known to the plaintiff from the time when the plaintiff was applied to by Reynolds for the money to meet a pay-roll. The president of the plaintiff, a witness, on being asked why he did not bring any suit against Reynolds, said, "Well, I thought it was useless. It would probably have driven him into bankruptcy".

Although the situation was known to the president of the plaintiff corporation, he had confidence in the integrity of Mr. Reynolds and for years hoped that he would get back into business and pay the debt, believing he would pay when he became able to do so. In 1941 however, that hope died. Mr. Reynolds had not got back into business and his condition had not materially changed. In that year the president of the plaintiff had a conversation with Mr. Reynolds and, as he testified, " * * * told Mr. Reynolds it seems useless to hold this account against him, now that he is working. I decided to cancel the account and from now on he don't owe us." On being asked why he came to that conclusion in the year 1941, the president of the plaintiff testified that he "assumed that he (Mr. Reynolds) owed other contractors and working under a salary with four children to support, it didn't look very hopeful that it could be collected * * * so I made my decision, at that time that it was useless to carry that bill any longer and I cancelled it. I used my judgment. I think my judgment was sound in doing so".

Evidence was introduced to show,—and I also find,—that 1941 was the first year after 1931, in which it would have been particularly advantageous to the plaintiff to take this loss in its income tax return.

■■ The only question of law involved is whether the plaintiff has sustained the burden resting upon it of proving that the debt referred to became worthless within the taxable year 1941. Internal Revenue Code, Sec. 23(k) (1), 26 U.S.C.A. Int.Rev. Code, § 23(k) (1). It seems to me clear that it has not. The taxpayer does not have the latitude he formerly did in determining when a debt due him has become worthless. The case in this Circuit of Red-

man v. Commissioner, 1 Cir., 155 F.2d 319, 320, is in point and decisive. It holds that prior to the amendment that governs the instant case the taxpayer was not compelled to take his deduction in the year the debt actually had become worthless, but in the year the hypothetical "reasonable man" would consider it so. It is now otherwise. "Congress has changed the standard for the determination of worthlessness by substituting for the subjective test of ascertainment of worthlessness the objective test of actual worthlessness * * *. The taxpayer now has the burden of showing that the debt actually became worthless during the year for which the deduction is sought." Redman v. Commissioner, supra.

■ The plaintiff argues, in substance, that so long as a prudent, experienced and reasonable business man,—such as its president undoubtedly is,—knowing all the circumstances, and the character of the debtor, has confidence that the debt will be paid, he is authorized to carry it along, and not charge it off, till he changes his mind for some good reason. But that is only a somewhat vague modification of the subjective test which Congress in the amendment has tried to avoid. The reasonableness of a creditor's beliefs and hopes is no longer a criterion; it is whether, as the pertinent Regulation provides, " * * * the surrounding circumstances indicate that a debt is worthless and uncollectible and that legal action to enforce payment would in all probability not result in the satisfaction of execution on a judgment"; in other words, actual worthlessness, and not the opinion, judgment or hope of the creditor-taxpayer, whether he is a reasonable and prudent man or not.

■ The debt in this case was uncollectible after 1931 because the debtor was wholly unable to pay, and after 1938, for the further reason that it was outlawed. Nothing happened in 1941 to make the debt valueless to any greater extent than during the preceding ten years. The creditor apparently lost confidence of eventual payment in 1941, but that does not change the actual worth of the debt. There is no proof that "the debt became worthless within the taxable year", but on the contrary that it became worthless, as worthlessness is de-

534

fined by the Regulations, long before that year.

Judgment must be rendered for defendant with costs.